**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| Wayne Bartosiake, individually and on behalf of all others similarly situated, | 1:21-cv-04495 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Bimbo Bakeries USA, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Bimbo Bakeries USA, Inc. ("defendant") manufactures, labels, markets, and sells a chocolate cake purporting to be iced with chocolate fudge ("Chocolate Fudge Iced Cake"), under the Entenmann's brand ("Product").



2. This representation is misleading because it gives consumers the impression the Product contains a greater relative and absolute amount of fudge than it does.

## I.    DEFINITIONS OF FUDGE

3.    Fudge "is a type of sugar candy that is made by mixing sugar, butter and milk."[1]

4.    Though fudge can have almost any flavor, milkfat is the central component.

5.    An 1893 recipe for fudge called for "Four cups granulated sugar; one cup cream; one cup water; one-half cake chocolate; one-half Cup butter."[2]

6.    In 1896, The Los Angeles Times published the original fudge recipe by the Vassar students credited with first making fudge: "Two cups of sugar, one cup of milk, a piece of butter one-half the size of an egg" and added flavoring.[3]

7.    A 1902 fudge recipe from Mrs. Rorer's New Cook Book includes:[4]

    4 ounces of chocolate
    2 cups of sugar
    1 teaspoonful of vanilla
    1/2 cup of milk
    1 rounding tablespoonful of butter

8.    Molly Mills, one of today's leading authorities on fudge, recently described it as made "most commonly from butter, milk, sugar, and chocolate."[5]

9.    The Oxford Companion to Sugar and Sweets notes that:

    Traditionally, fudge is made by gently boiling granulated sugar and milk to the soft-ball stage (234° to 240°F/ 112° to 115°C); adding butter; cooling the mixture somewhat (120°F/49°C); then beating until thick, creamy, and less glossy.[6]

10.    The encyclopedic, An A-Z of Food and Drink, describes fudge as "a sort of soft,

---

[1] Wikipedia contributors. "Fudge." *Wikipedia, The Free Encyclopedia*. Wikipedia, The Free Encyclopedia, 5 Jan. 2021. Web. 8 Jan. 2021.
[2] Mrs. J. Montgomery Smith, of Wisconsin, Alternate Lady Manager.
[3] Los Angeles Times, "'Fudges' Are Vassar Chocolates," May 11, 1896, p.2.
[4] Sarah Tyson Rorer [Arnold and Company: Philadelphia] 1902, p. 629.
[5] Molly Mills, Come Get Your Fudge: 40 Tasty and Creative Fudge Recipes for Everyone, Amazon Digital Services LLC, June 11, 2019.
[6] Goldstein, Darra, and Sidney Mintz. The Oxford companion to sugar and sweets. Oxford University Press, 2015.

somewhat toffee-like sweet made by boiling together sugar, butter, and milk."[7]

11.     A leading treatise on confectionary science and technology offers a model commercial formulation for fudge which includes between eight and sixteen percent butter and between twelve and twenty percent sweetened condensed milk.

10.2    Formulations and Ingredients                                                    275

Table 10.1   Typical batch formulations (in %) for caramel, fudge and toffee

|  | Commercial caramel (ungrained) | Caramelized sugar caramel | Fudge | English toffee (American) |
|---|---|---|---|---|
| Water | 15–25 | 0 | 10–15 | 8–10 |
| Sucrose | 10–20 | 55–65 | 30–50 | 45–55 |
| Glucose syrup (42 DE) | 36–46 | 0–5 | 10–20 | 0 |
| Sweetened condensed milk[a] | 20–40 | 0 | 12–20 | 0 |
| Cream | 0 | 25–35 | 0 | 0 |
| Butter[b] (fat) | 5–15 | 6–12 | 8–16 | 40–50 |
| Fondant | 0 | 0 | 3–5 | 0 |
| Chocolate liquor/cocoa powder | 0 | 0 | 0–10 | 0 |
| Salt | 0.2–0.5 | 0.2–0.5 | 0.2–0.5 | 0.3–0.6 |
| Vanilla | 0.1–0.3 | 0.1–0.3 | 0.1–0.3 | 0.1–0.3 |
| Lecithin | 0–0.4 | 0–0.4 | 0–0.4 | 0.25–0.45 |
| Nuts (unroasted) | 0 | 0 | 0–12 | 6–12 |

[a]Other dairy ingredients might include evaporated milk or dried milk powder
[b]Salted butter needed for toffee

12.     Dictionaries confirm the definitions held by confectionery experts.

13.     Google Dictionary – based on its leading search engine that discovers the most relevant and accurate information – defines fudge as "a soft candy made from sugar, butter, and milk or cream."[8]

14.     The Cambridge Dictionary defines fudge as "a soft sweet made from sugar, butter, and milk."[9]

15.     Collins Dictionary defines fudge as "a soft brown candy that is made from butter, cream, and sugar."[10]

16.     Dictionary.com defines fudge as "a soft candy made of sugar, butter, milk, chocolate,

---

[7] John Ayto, An A-Z of Food and Drink, Oxford University Press, 2002, p. 133.
[8] Fudge definition – Google search.
[9] Cambridge Dictionary, fudge.
[10] Collins Dictionary, fudge.

and sometimes nuts."[11]

17. Macmillan Dictionary defines fudge as a "soft brown sweet food made from sugar, butter, and milk or cream."[12]

## II. FAT INGREDIENTS ARE ESSENTIAL TO FUDGE

18. The quality of fudge depends on the amount and type of fat-contributing ingredients.[13]

19. The small droplets of fat are dispersed throughout the candy mass, providing lubricity and impart desirable flavor release.

20. If the fat content is too high, it can lead to oil separation and a greasy texture.[14]

21. The fat ingredients are typically from dairy or vegetable oils.

22. The dairy ingredients are based on milk fat, mainly added through butter, which is 80% milkfat.

23. Other dairy ingredients like milk and milk derivatives may be added as well.

24. Vegetable oil ingredients like palm kernel and palm oil, are solid at room temperature, and referred to as "hard [vegetable] fats."

25. The dairy ingredients are based on milk fat, mainly added through butter, which is 80% milkfat.

26. Dairy ingredients impart a creamy, rich taste to fudge, because milkfat contains hundreds of lactones, aroma compounds which contribute to its taste.

27. Milk fat melts at about mouth temperature (35 °C/95 °F) and does not contribute to

---

[11] Dictionary.com, fudge.
[12] Macmillan Dictionary, fudge.
[13] International Dairy Federation, Bulletin, 1982.
[14] Hartel R.W., von Elbe J.H., Hofberger R. (2018) Caramel, Fudge and Toffee. In: Confectionery Science and Technology. Springer, Cham. https://doi.org/10.1007/978-3-319-61742-8_10

a waxy sensation.

28.     Alternatives to milk fat – such as vegetable oils – do not melt at mouth temperature and leave a waxy mouthfeel.

29.     Vegetable fats do not contribute to the flavor of fudge, because they are theoretically "refined, bleached and deodorized."

30.     However, these ingredients are subject to reversion where they contribute off-odors to foods.

31.     One popular recipe website echoes the importance of dairy ingredients to fudge, advising, "When making fudge, be sure to use good quality butter and do not substitute margarine (vegetable oils)," since they contain more water and can prevent the fudge from setting up properly.[15]

32.     Another site cautions, "Look for recipes that call for butter instead of margarine (vegetable oils)."[16]

33.     One chef recommends to "Never use margarine (vegetable oils) instead of butter [in fudge], because your fudge won't taste as good and will have a shorter shelf life."

## III.   STATE AND FEDERAL REGULATIONS REQUIRE FRONT LABEL TO DISCLOSE ICING DOES NOT CONTAIN FUDGE

34.     Federal and identical state regulations require a product's front label to contain a common or usual name which accurately identifies or describes, "in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("[a] federal regulation automatically adopted pursuant to this [Federal Food, Drug &

---

[15] Use Real Butter For Making Best Fudge, RecipeTips.com.
[16] Easy Fudge Making Tips, The Happy Housewife.

Cosmetic] Act takes effect in this State on the date it becomes effective as a Federal regulation.").

35.    Defendant's representations violate 21 U.S.C. § 343(a)(1) and 410 ILCS 620/11, which deem a food misbranded when the label contains a statement that is "false or misleading."

36.    Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

37.    The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing products like Defendant's Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

38.    Whether a chocolate cake is iced with fudge and the ingredients which comprise it or substitutes lesser-quality ingredients in place of fudge, is basic front label information consumers rely on when making quick decisions at the grocery store.

39.    Fudge is a characterizing feature of the Product, and its ingredients have a material bearing on price or consumer acceptance, and consumers believe fudge is present in an amount greater than is the case.

40.    However, the Product lacks ingredients essential to fudge – butter and milk – and substitutes lower quality and lower-priced vegetable oils and whey.

INGREDIENTS: SUGAR, WATER, BLEACHED WHEAT FLOUR, EGGS, VEGETABLE OIL (SOYBEAN), COCOA (PROCESSED WITH ALKALI), INVERT SUGAR, GLYCERIN, VEGETABLE SHORTENING (PALM, SOYBEAN), WHEY, CORN SYRUP, FOOD STARCH-MODIFIED (CORN), LEAVENING (BAKING SODA, SODIUM ALUMINUM PHOSPHATE), ARTIFICIAL FLAVORS, MONO- AND DIGLYCERIDES, SALT, GLYCERYL LACTOESTERS OF

FATTY ACIDS, PRESERVATIVES (POTASSIUM SORBATE, SORBIC ACID, SODIUM PROPIONATE), POLYSORBATE 60, XANTHAN GUM, AGAR, DEXTROSE, SOY FLOUR.

INGREDIENTS: SUGAR, WATER, BLEACHED WHEAT FLOUR, EGGS, VEGETABLE OIL (SOYBEAN), COCOA (PROCESSED WITH ALKALI), INVERT SUGAR, GLYCERIN, VEGETABLE SHORTENING (PALM, SOYBEAN), WHEY, CORN SYRUP, FOOD STARCH-MODIFIED (CORN), LEAVENING (BAKING SODA, SODIUM ALUMINUM PHOSPHATE), ARTIFICIAL FLAVORS, MONO- AND DIGLYCERIDES, SALT, GLYCERYL LACTOESTERS OF FATTY ACIDS, PRESERVATIVES (POTASSIUM SORBATE, SORBIC ACID, SODIUM PROPIONATE), POLYSORBATE 60, XANTHAN GUM, AGAR, DEXTROSE, SOY FLOUR. **CONTAINS WHEAT, SOY, MILK, EGG.**                                                                R20-176

41.    The key fudge ingredients are easily identifiable as including "vegetable oil (soybean)," "vegetable shortening (palm, soybean)" and whey.

42.    These vegetable fats – palm and soybean oil – are often used in combination with milk fat ingredients to reduce costs.

43.    However, the Product does not use these vegetable fats in combination with milk fat, as it lacks any butter or milk, but with whey.

44.    Whey is the watery part of milk that is separated from the coagulable part or curd, and a by-product of cheese manufacturing.

45.    Whey is mainly protein, lacks the milkfat of real milk, and is cheaper than milk.

46.    Milk provides fudge with its creamy texture.

47.    Reasonable consumers are misled by the descriptive term, "Fudge," because they expect this means a non-*de-minimis* relative amount of dairy ingredients, like milk and butter, instead of substitute, lower quality replacements like vegetable fats and whey.

48.    The result is that the Product's "fudge" provides less satiety, a waxy and oily mouthfeel, and leaves an aftertaste.

49.    Consumption of dairy ingredients, like butter and milk, does not have the negative effects on cholesterol of vegetable oils.

50.    Consumption of vegetable oils is linked to health problems, like increased chances

of heart disease.

51.    Milk fat ingredients also contain the fat-soluble vitamins A, D, E, and K, which are absent from hardened vegetable fats.

52.    Dairy ingredients impart a creamy, rich taste to fudge, as butter and milk contain hundreds of lactones, well-known aroma compounds which contribute to taste.

53.    The additional cost of using ingredients expected in fudge would not significantly or materially increase the price, as the Product is already sold at a premium price.

## IV.    CONCLUSION

54.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

55.    The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

56.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

57.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

58.    The Product is sold for a price premium compared to other similar products, no less than $5.22 for one cake (19.0 OZ), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

59.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

8

60.     The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

61.     Plaintiff Wayne Bartosiake is a citizen of Illinois.

62.     Defendant Bimbo Bakeries USA, Inc. is a Delaware corporation with a principal place of business in Horsham, Montgomery County, Pennsylvania

63.     The parties are citizens of different states.

64.     Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

65.     Venue is in the Eastern Division because plaintiff resides in Will County, which is where the events giving rise to the present claims occurred, the awareness of the misrepresentations and consumption of the Product.

<u>Parties</u>

66.     Plaintiff Wayne Bartosiake is a citizen of Bolingbrook, Will County, Illinois.

67.     Defendant Bimbo Bakeries USA, Inc., is a Delaware corporation with a principal place of business in Horsham, Pennsylvania, Montgomery County.

68.     Defendant is the US-subsidiary of the Mexican bakery conglomerate Grupo Bimbo.

69.     Defendant controls most of the formerly independent bakeries in the United States and acquired Entenmann's in 2002.

70.     The Entenmann's brand is over one hundred years old and is a classic American immigrant success story.

71.     Entenmann's is one of the largest producers of baked goods in the United States, from its humble origins on the Lower East Side of New York City across the country.

72.     Defendant is known as a pioneer of baked goods, having developed the "see through"

cake box along with novel baking techniques.

73. The Product is sold at thousands of retail locations – grocery stores, drug stores, big box stores, convenience stores, etc. – and online.

74. The Product is sold in sizes including 19 OZ (539g).

75. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including a grocery store owned and controlled by Kroger, in downtown Chicago, between February 22, 2021, and April 22, 2021, among other times.

76. Plaintiff bought the Product because he expected it would contain fudge, understood by him as containing the above-identified traditional fudge ingredients.

77. Plaintiff wanted more than a "fudge taste," which he nevertheless failed to receive, due to the relatively greater amount of vegetable oils vis-à-vis any dairy ingredients.

78. Plaintiff wanted a relatively greater amount of fudge ingredients, which was not received.

79. Plaintiff did not expect that the "fudge" would consist mainly of vegetable oils and dairy ingredients other than milkfat.

80. Plaintiff bought the Product at or exceeding the above-referenced price.

81. Plaintiff relied on the representations identified here.

82. Plaintiff would not have purchased the Product if he knew the representations were false and misleading.

83. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

84. The Product was worth less than what Plaintiff paid and he would not have paid as

much absent Defendant's false and misleading statements and omissions.

85.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition.

Class Allegations

86.    Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of Iowa and Arkansas who purchased the Product during the statutes of limitations for each cause of action alleged.[17]

87.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

88.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

89.    Plaintiff is an adequate representative because his interests do not conflict with other members.

90.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

91.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

92.    Plaintiff's counsel is competent and experienced in complex class action litigation

---

[17] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Iowa (Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 et seq.); Arkansas (Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et. seq.).

and intends to protect class members' interests adequately and fairly.

93.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
<u>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

94.    Plaintiff incorporates by reference all preceding paragraphs.

95.    Plaintiff and class members desired to purchase a product that contained fudge, understood as being comprised of a non-de minimis amount of milk fat ingredients, instead of mostly vegetable oils.

96.    Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

97.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

98.    Plaintiff relied on the representations.

99.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

100.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

101.   Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

102. As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

103. In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq</em>.

104. The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained fudge, understood as being comprised of a non-de minimis amount of milk fat ingredients, instead of mostly vegetable oils.

105. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

106. This duty is based on Defendant's outsized role in the market for this type of Product.

107. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

108. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

109. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

110. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

111. Defendant had a duty to truthfully represent the Product, which it breached.

13

112. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodian of the Entenmann's brand.

113. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a nationally recognized and trusted brand.

114. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

115. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

116. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained fudge, understood as being comprised of a non-de minimis amount of milk fat ingredients, instead of mostly vegetable oils

117. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

118. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

14

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   August 24, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com